

PX 10

# POSTED ON WEB SITE

FILED

JUN 23 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Case No. 03-19979-B-7 |
| Eddie D. Martinez, | ) | |
|        Debtor. | ) | |
| _____ | ) | Adversary Proc. No. 04-1093 |
| Sara L. Kistler, | ) | |
| United States Trustee, | ) | |
|        Plaintiff, | ) | |
| v. | ) | |
| Eddie D. Martinez, | ) | |
|        Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM DECISION

Jeffrey J. Lodge, Esq., of the Office of the United States Trustee, appeared for Sara L. Kistler, United States Trustee ("UST").

Steven M. Stanley, Esq., of Law Offices of Steven M. Stanley, appeared on behalf of the debtor Eddie D. Martinez ("Debtor").

The UST's first amended complaint objecting to discharge was tried before the undersigned on May 12, 2005. This is an adversary proceeding to determine whether the Debtor should be denied a discharge. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and 11 U.S.C. § 727(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). This Memorandum Decision contains the court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) (made applicable here by Fed.R.Bankr.P. 7052). For the reasons set forth below, the Debtor's discharge shall be DENIED.

**Findings of Fact.**

This bankruptcy was filed as a voluntary chapter 7 proceeding on October 31, 2003. Rossana A. Zubrzycki-Blanco was appointed as the chapter 7 trustee (the

1   "Trustee"). The Debtor operated a farm labor contracting and trucking business until

2   August 2000. After that, the Debtor worked for and provided trucking services to Robert

3   Garcia until September 2001. The Debtor owned and operated numerous pieces of

4   equipment in conjunction with his business and trucking activities. The Debtor's initial

5   bankruptcy schedules state that at the time of filing, he still owned seven "non-

6   operational" trucks collectively valued at $0, and a 1995 Chevrolet pick-up valued at

7   $500. The Debtor's amended schedules added eight additional items of equipment, each

8   of nominal value. The Debtor's schedules and statement of financial affairs make no

9   mention of the former business operation.[1]

10      At the continued meeting of creditors, the Trustee was approached by a

11   representative of First Recovery, LLC, an assignee of the Small Business Administration

12   ("SBA"), who provided the Trustee with a long list of equipment, including trucks,

13   trailers, forklifts, tractors and pickups, which the Debtor purported to own at one time

14   based on loan documents given by the Debtor to the SBA in 1991. The Debtor

15   acknowledged that he did own the equipment, but contends that he gave most of it to his

16   sons, Alfredo and Arthur Martinez in September 2001. They operate a business known as

17   A&T Harvesting and Trucking and the Debtor testified that they had continued to pay the

18   taxes, insurance and loans on the equipment. The Debtor also informed the Trustee that

19   some of the equipment was located at a third party's facility in Kern County which he

20   called the "Del Papa Yard"; he did not know the address. The Debtor did not produce

21   any records of his business assets, or his purported transfer of equipment.

22   / / /

23

24   _____

25   [1]Paragraph 18 in the Debtor's statement of financial affairs required the Debtor to: list the names, addresses, taxpayer identification numbers, nature of the businesses,

26   and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole

27   proprietorship, or was a self-employed professional within the **six years** immediately preceding the commencement of this case . . . .

28      In response to this question, the Debtor answered "None."

2

The disputed equipment included approximately 22 trucks which were still registered in the Debtor's name with the Department of Motor Vehicles ("DMV"). The Debtor never actually transferred title to any of the vehicles to his sons because he did not want to pay the transfer fees to the DMV. Indeed, the Trustee determined based on her own search of the DMV records that the Debtor still held "registered owner" title to the vehicles at commencement of this case. The DMV records also showed that many of the vehicles were still subject to liens in favor of creditors, shown on the records as "legal owners," including Kaweah Company, California Republic Bank, California Thrift and Loan, Fireside Leasing, E.M. Tharp, Inc., Bank of the Sierra, Clark Equipment Credit Corp. and GMAC. The evidence also suggests that the Debtor never informed any of the registered creditors of the purported transfer nor did he pay off the loans secured by the vehicles. The Debtor's interest in the vehicles was not disclosed on his schedules. Neither were any debts associated with the vehicles.

On May 6, 2002, the Debtor signed documents to purchase four fork lifts from Berchtold Equipment Company, to be financed by Newholland Credit. The Debtor was listed on the documents as the "buyer." Alfredo Martinez was listed on the documents as a co-purchaser/co-borrower. The Debtor testified that he had enjoyed a prior business relationship with Berchtold Equipment Company, that the forklifts were really for Alfredo Martinez and that he only signed the documents as an accommodation to help his son. Neither the forklifts, nor the debt to Newholland Credit was disclosed on the Debtor's schedules.

After the meeting of creditors, the Trustee engaged the services of Gould Auctions to help her locate and identify any additional equipment that may belong to the Debtor. The auctioneer did locate a large quantity of operating equipment at the "Del Papa" location, including trucks, trailers and forklifts with an estimated net value of between 50,000 and $60,000. Through the DMV records, the Trustee was able to trace title to the trucks and trailers to the Debtor. The Trustee made a formal request of the Debtor for information relating to ownership of the other equipment. She got permission from the

3

1   owner of the Del Papa location to inventory the equipment and lock the front gate in an

2   effort to secure the equipment.

3          The Trustee applied for authority to employ the services of Gould Auctions to

4   hold an auction of the equipment at the Del Papa location.  On April 8, 2004, the Trustee

5   brought a motion for authority to auction the equipment which the Debtor opposed.  The

6   Debtor argued that he did not own any equipment other that which he had disclosed and

7   declared as exempt on his bankruptcy schedules.  The court continued the hearing and

8   ordered the Debtor to produce records to the Trustee showing who did own the

9   equipment.  The Trustee sent the Debtor a formal request to produce that information, but

10  the Debtor failed to do so.

11         At the continued hearing, the court authorized the Trustee to auction the

12  equipment.  However, shortly before or after the hearing, Arthur Martinez made

13  arrangements with the adjoining land owner and removed most of the equipment through

14  the back gate of the Del Papa location.  The Trustee tracked some of the forklifts back to

15  Berchtold Equipment Company where they had been sold or surrendered.  She was not

16  able to locate all of the missing equipment.  On December 9, 2004, the court approved a

17  settlement between Arthur Martinez, the Trustee, and the Debtor, wherein Arthur

18  Martinez paid $47,500 to the Trustee for a release of the estate's interest in all of the

19  disputed equipment.

20         The Debtor signed his bankruptcy schedules and the statement of financial affairs,

21  and attested that they were true and correct, under penalty of perjury on October 30, 2003.

22  At trial, when questioned about the completeness of his schedules, the Debtor testified

23  that he could not remember if he reviewed the documents, or had his attorney review the

24  documents with him, before he signed them.

25  **Conclusions of Law.**

26         The UST seeks a ruling that the Debtor's discharge should be denied pursuant to

27  11 U.S.C. § 727(a) which provides in pertinent part:

28  / / /

4

(a) The court shall grant the debtor a discharge, unless–

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account;

. . .

(5) the debtor has failed to explain satisfactorily before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

Discharge under Bankruptcy Code section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Dubrowsky v. Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (D.C. E.D. N.Y. 2000) (citing *In re Sicari*, 187 B.R. 861, 880 (Bankr. S.D.N.Y 1994), (citing *In re McManus*, 112 B.R. 773, 775 (Bankr. E.D.Va. 1990) and *In re Tabibian*, 289 F.2d 793, 794 (2nd Cir. 1961)).

The standard of proof in a dischargeability action is the preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). The burden of proof rests on the trustee. *Boroff v. Tully (In re Tully)* 818 F.2d 106, 110 (1st Cir. 1987).

**Removal of Equipment - 11 U.S.C. § 727(a)(2).**

The UST contends that the Debtor transferred the equipment to his sons and caused the equipment to be removed from the Del Papa location with the intent to hinder and delay the Trustee's ability to sell it. The evidence establishes that the equipment was never actually transferred to the sons and Arthur Martinez testified that he caused the

5

equipment to be removed from the storage yard.  The evidence suggests that the Debtor failed to cooperate with the Trustee in her effort to locate and secure the equipment.  However, the evidence was, at best, inconclusive that the Debtor played any roll in actually removing the equipment.

**Failure to Maintain Business Records - 11 U.S.C. § 727(a)(3).**

The UST contends that Debtor's discharge should be denied based on his failure to adequately keep or preserve records necessary to ascertain his financial condition.  11 U.S.C. § 727(a)(3) provides that a court shall deny a debtor's discharge if:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

"The purpose of section 727(a)(3) is to make full financial disclosure a condition precedent to the grant of discharge in bankruptcy." *Meridian Bank v. Alten*, 958 F.2d 1226, 1234 (3rd Cir. 1992). "'In order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve *adequate* records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'" *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994) (quoting *Meridian Bank*, 958 F.2d at 1232) (emphasis added).  In assessing whether or not a debtor maintained and preserved adequate records, a court should take into account the sophistication of the debtor and the extent of that individual's economic activities. *Meridian Bank*, 958 F.3d at 1231.

It is clear that the Debtor failed to make a full disclosure of his financial affairs.  There was no direct evidence that the Debtor failed to keep business records, but he certainly failed, or refused, to produce them to the Trustee after she discovered the existence of the former business and the related assets.  Based thereon, the court can infer that reasonable business records either never existed, or were destroyed sometime in the three-year period between closure of the business and commencement of the bankruptcy.

The Debtor contends that he was not sophisticated in the keeping of business

1  records, however, he was a business man.  For many years prior to August 2000 he

2  operated a complex business with numerous clients, employees and assets.  Yet he

3  completely failed to keep or preserve books, documents and appropriate records from

4  which the Trustee could ascertain his financial condition and the disposition of his

5  business assets (including the purported "gifts" to his sons).  The Trustee had to conduct

6  her own investigation to locate the equipment and track the title through the DMV

7  records, with little help from the Debtor.  The Debtor closed his business about three

8  years before filing bankruptcy.  He continued to operate the equipment for another year

9  after that.  At the time of filing, he was still the registered owner of numerous vehicles

10  and he still was legally obligated on numerous debts.  A full set of books and records for

11  these activities should have been made available to the Trustee, but were not.  Other than

12  her ability to locate about $50,000 worth of equipment, it was virtually impossible for the

13  Trustee to fully evaluate the financial demise of the business.  The Debtor has not shown

14  that his failure to keep such records was justified under the circumstances of the case.

15  **Knowingly Making a False Oath and Failure to Explain the Loss of Assets - 11**
**U.S.C. §§ 727(a)(4) & (5).**

16

17  The Trustee also contends that Debtor's discharge should be denied based on

18  alleged false oaths he made in connection with his case.  11 U.S.C. § 727(a)(4) provides,

19  in pertinent part, that a court shall deny a debtor discharge if "the debtor knowingly and

20  fraudulently, in or in connection with the case - (A) made a false oath or account."

21  The fundamental purpose of section 727(a)(4)(A) is to insure that the trustee and

22  creditors have accurate information without having to conduct costly investigations.  *Wills*

23  *v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing *In re Aubrey*, 111 B.R.

24  268, 274 (9th Cir. BAP 1990).  To deny a debtor's discharge under section 727(a)(4)(A),

25  "the plaintiff must show that (1) the debtor knowingly and *fraudulently* made a false oath;

26  and (2) the false oath related to a *material* fact."  *Wills*, 243 B.R. at 62 (citing *Aubrey*, 111

27  B.R. at 274) (emphasis added).

28  A false statement is material if it "bears a relationship to the debtor's business

7

1    transactions or estate, or concerns the discovery of assets, business dealings, or the

2    existence and disposition of the debtor's property." *Wills*, 243 B.R. at 62 (citing *In re*

3    *Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

4         To deny a debtor's discharge pursuant to section 727(a)(4), the plaintiff must also

5    establish *actual* fraudulent intent. *Devers v. Bank of Sheridan, Montana (In re Devers)*,

6    759 F.2d 751, 753-754 (9th Cir. 1985).  Constructive fraudulent intent cannot be the basis

7    for denial of discharge. *Id.*  However, "fraudulent intent may be established by

8    circumstantial evidence, or by inferences drawn from a course of conduct." *Id.*  "A court

9    may find the requisite intent where there has been a pattern of falsity or from a debtor's

10   reckless indifference to or disregard of the truth." *Wills*, 243 B.R. at 64.

11        Here, the Debtor was, at best, grossly negligent or recklessly indifferent in the

12   preparation and verification of his bankruptcy schedules.  The court is persuaded that the

13   Debtor had every good intention when he gave possession of the equipment to his sons in

14   2001, but when the bankruptcy came, he disregarded the truth of those transactions in an

15   effort to protect his sons.  The schedules were incomplete and inaccurate in that they did

16   not fully disclose material facts, such as the existence of the prior business, the full extent

17   of the debts, and the assets which the Debtor still held in this name.  The Debtor knew

18   that title to the vehicles was still in his name and he engaged in a pattern of falsity with

19   regard to the equipment.  He intentionally did not change the title records because he did

20   not want the DMV to know about the purported "transfer" to his sons.  The evidence

21   suggests that he did not tell any of the creditors listed on the DMV records that his sons

22   were using their collateral.

23        Based on the evidence, the court is led to one of two conclusions: either the

24   Debtor omitted any reference to the business and the equipment from his schedules and

25   statement of financial affairs intentionally, so the Trustee would not find out about them,

26   or he failed to review the schedules for completeness and accuracy before he filed them.

27   Either way, the Debtor is not eligible for a discharge.  The intentional failure to file

28   complete and accurate bankruptcy schedules is directly prohibited by § 727(a)(4).  The

8

1    failure to review the schedules before signing them under penalty of perjury is an

2    independent grounds to deny discharge pursuant to § 727(a)(4). *In re Leija*, 270 B.R. 497

3    (Bankr. E.D. Cal. 2001).

4    **Conclusion.**

5        Based on the foregoing, the court finds and concludes that the Debtor failed to

6    keep and preserve adequate business records from which his financial condition could be

7    ascertained, he failed to adequately explain to the Trustee the disposition of his assets,

8    and he filed incomplete and inaccurate schedules under penalty of perjury. Accordingly,

9    the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C. § 727(a)(3), (4) &

10   (5).

11       Dated:   June ___23___, 2005

12

13

14   W. Richard Lee
     United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.

Eddie D. Martinez
500 Fairfax Rd
Bakersfield, CA 93307

Steven M. Stanley
1801 Oak St #151
Bakersfield, CA 93301

Jeffrey J. Lodge
1130 O St #1110
Fresno, CA 93721

Rossana A. Zubrzycki-
Blanco
1331 L St
Bakersfield, CA 93301

Justin D. Harris
7110 N Fresno St #400
Fresno, CA 93720

DATED:  6/24/05

By: _____
Deputy Clerk

EDC 3-070  (New 4/21/00)